# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| JOHN MAHAFFEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-CV-3433-S-WBG |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION DENYING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS

Pending is Plaintiff John Mahaffey's appeal of Defendant Commissioner of Social Security's final decision denying Plaintiff's application for supplemental security income. For the following reasons, the Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings.

## I. BACKGROUND

Plaintiff was born in 1995 and has a high school education. R. at 80-81, 184. He has no past relevant work. R. at 29, 99. On November 10, 2016, Plaintiff applied for supplemental security income, alleging he became disabled on July 13, 2016. R. at 184-89. His application was initially denied, and he requested a hearing before an administrative law judge ("ALJ"). R. at 119-23, 126-28.

In October 2018, ALJ Mary J. Leary conducted a hearing. R. at 75-103. On December 18, 2018, the ALJ issued her decision, finding Plaintiff is not disabled. R. at 20-30. The ALJ concluded Plaintiff has the severe impairments of generalized anxiety disorder, anxiety disorder, schizophrenia, and attention deficit disorder. R. at 22. The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. §

416.967(c), with the following additional limitations:

> [H]e can never climb ladders[,] ropes[,] scaffolds[,] and must avoid all hazards such as dangerous machinery and unprotected heights. The claimant is able to understand, remember and carry out simple instructions consistent with routine, repetitive, unskilled work at SVP 1 and SVP 2; he can tolerate occasional contact with coworkers and supervisors, but no contact with the general public in a setting where the individual complete tasks relatively independently; he can perform simple decision-making related to basic work functions; he can tolerate minor, infrequent changes within the workplace; and he would likely be off task 5 percent of the work day.

R. at 25.

As set forth in her decision, the ALJ asked a vocational expert ("VE") during the hearing if jobs existed in the national economy for an individual with Plaintiff's age and education, and the ALJ's RFC. R. at 29-30, 99-100. The VE testified such an individual could work as a store laborer and laundry worker. R. at 100. The ALJ also inquired if jobs existed in the national economy for the same hypothetical individual if he (1) was off task fifteen (instead of five) percent of the workday, (2) had to miss one day of work per month, or (3) "would need to take additional breaks at random times during the workday." R. at 101. The VE stated any of the additional limitations identified by the ALJ would result in the employee losing his job. R. at 101-02.[1]

Based on her review of the record, her RFC determination, and the VE's testimony, the ALJ found Plaintiff was not under a disability since his November 10, 2016 application and could work as a store laborer or laundry worker. R. at 30. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his appeal. R. at 1-3. He now appeals to this Court. Doc. 3.

---

[1] During the hearing, Plaintiff's counsel asked if jobs existed in the national economy for an individual with Plaintiff's age and education and the ALJ's RFC if the person was unable to sustain concentration for two hours at a time. R. at 102. The VE testified such a person would be unable to sustain employment. *Id*.

## II.     STANDARD OF REVIEW

This Court must affirm the Commissioner's decision "if the Commissioner's denial of benefits complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Cline v. Colvin,* 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted). If substantial evidence supports the Commissioner's decision, this Court may not reverse the Commissioner's decision if substantial evidence also "would have supported a contrary outcome," or this Court "would have decided the case differently." *Cline*, 771 F.3d at 1102.

## III.    DISCUSSION

Plaintiff contends this matter should be remanded because the ALJ did not properly weigh the medical opinions assessing his mental functioning and failed to provide good reasons for the weight she afforded the medical opinions. Doc. 8, at 15-21. In addition, Plaintiff argues the mental limitations in the RFC are not supported by substantial evidence.[2]  *Id*. at 21-25.

### A.      **Weight Afforded to Medical Opinions**

Four medical opinions assessed Plaintiff's mental functioning in a work setting. The first two opinions were provided by consultative examiner Robert Forsyth, Ph.D., and state psychological consultant Charles Watson, Psy.D. Plaintiff's treating mental health provider, Sreekant Kodela, M.D., furnished the other two opinions. The ALJ assigned "some" or "partial" weight to all four opinions.

---

[2] Plaintiff's appeal is limited to his mental functioning and does not address his physical functioning.

### (1) Robert Forsyth, Ph.D.

In June 2015, Plaintiff scored overall in the low average to average range on the Wechsler Adult Intelligence Scale IV (WAIS-IV) intelligence test administered by consultative examiner Dr. Forsyth. R. at 27, 307-12. Dr. Forsyth also conducted a mental status examination of Plaintiff. R. at 27, 306-07. Based on this examination, Dr. Forsyth opined Plaintiff "is able to understand and remember simple as well as rather complex instructions." R. at 27, 307. He also determined "[s]ustaining concentration and persistence in such tasks would appear to be adequate from a mental status perspective." *Id*.

When considering Dr. Forsyth's opinion, the ALJ noted the examination occurred more than one year prior to Plaintiff's alleged disability onset date. R. at 27. She also observed "evidence added to the record since Dr. Forsyth's examination suggests his mental conditions may have worsened." *Id*. For these reasons, the ALJ afforded "partial weight" to Dr. Forsyth's opinion.

### (2) Charles Watson, Psy.D.

In January 2017, psychological consultant Dr. Watson provided an opinion on Plaintiff's mental functioning. R. at 28, 108-13. Based solely on his review of medical records, Dr. Watson concluded Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work with or in proximity to others without being distracted by them; interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. R. at 109-13. In addition, Dr. Watson found Plaintiff "appears capable of understanding and remembering simple to moderately complex tasks," has "the capacity to interact with others on a limited contact basis," and is "able to adapt to moderately complex work settings." R. at 113.

The ALJ afforded "some but not significant weight" to Dr. Watson's opinion. R. at 28. She noted that although Dr. Watson did not examine Plaintiff, Dr. Watson reviewed "the evidence available at the time and supported his findings with detailed rationale and citations to the record." *Id*. The ALJ found Dr. Watson's opinion was "largely consistent with the record" but noted additional evidence had "been added which suggests the claimant is somewhat more limited than assessed by Dr. Watson." *Id*. The ALJ provided one specific example of evidence added to the record after Dr. Watson rendered his opinion: In August 2017, Plaintiff's treating psychiatrist diagnosed him with ADHD and prescribed medication. *Id*.

### (3) Sreekant Kodela, M.D.

Plaintiff met with Dr. Kodela in May 2016 complaining of paranoia and auditory hallucinations. R. at 345-46. The hallucinations were described as third person dialogues, intrusive voices, mundane commentary, conversations with voices, feeling watched, and seeing shadows "scurry across." *Id.* Dr. Kodela served as Plaintiff's treating mental health provider through at least October 2, 2018. *See* R. at 815-16. Dr. Kodela is a psychiatrist. R. at 92.

In March 2018 and again in October 2018, Dr. Kodela completed a Medical Source Statement – Mental ("MSS"). R. at 500-01, 815-16. In both documents, Dr. Kodela opined Plaintiff was "markedly limited"[3] in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruption from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest

---

[3] According to the MSS, markedly limited is "[m]ore than Moderate, but less than extreme resulting in limitations that seriously interfere[ ] with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." R. at 500, 815.

periods, travel in unfamiliar places, and use public transportation. *Id*. According to Dr. Kodela, between March 2018 and October 2018, there were other abilities that deteriorated from either mildly or moderately limited to markedly limited, including Plaintiff's ability to remember locations and work-like procedures, understand and remember detailed instructions, make simple work-related decisions, respond appropriately to changes in the work setting, and set realistic goals or make plans independent became more limited. *Id.*

Dr. Kodela also determined Plaintiff was "moderately limited"[4] in both March 2018 and October 2018 in his ability to work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. R. at 501, 816. Additionally, Dr. Kodela found Plaintiff's ability to ask simple questions, request assistance, accept instructions, and respond appropriately to criticism from supervisors became more limited between March 2018 to October 2018. *Id*. Specifically, Dr. Kodela determined Plaintiff was moderately limited (instead of mildly limited) in these abilities. *Id*.

Based on Plaintiff's medical history, clinical findings, diagnoses, and treatment, Dr. Kodela opined in both MSSs that Plaintiff would likely "be 'off task' from [his] symptoms that would interfere with attention and needed to perform even simple tasks." R. at 500, 815. More precisely, Dr. Kodela determined in March 2018 that Plaintiff would be off task at least 20% of the workday. R. at 500. In October 2018, Dr. Kodela downgraded this category by finding Plaintiff would be off task 25% of the workday. R. at 815. Dr. Kodela concluded in both MSSs

---

[4] According to the MSS, moderately limited is defined as "[i]mpairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." R. at 500, 815.

that Plaintiff's condition would cause him to miss work or leave work prematurely at least four days per month.[5] *Id*.

The ALJ afforded "only partial weight" to Dr. Kodela's opinions. R. at 28. To support that decision, the ALJ noted Dr. Kodela's "check box forms offer very little if any rationale or support for the assessed limitations, which are somewhat inconsistent with Dr. Kodela's treatment notes." *Id.* The ALJ also found Dr. Kodela "often noted the claimant was calm, smiling, relaxed, and polite; he had good eye contact and exhibited no agitation or aggression; his speech was normal and his mood was variable but sometimes euthymic; and he appeared to have normal attention and well sustained concentration." *Id*. The ALJ cited six appointments Plaintiff had with Dr. Kodela where these observations were made. *Id*. Plaintiff argues the ALJ erred in affording "only partial weight" to Dr. Kodela's opinion, and therefore, this matter should be reversed. Doc. 8, at 16-21.

Pursuant to the applicable Social Security regulation, the ALJ generally "give[s] more weight to medical opinions from [a claimant's] treating sources" because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of . . . impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 416.927(c)(2). If "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory

---

[5] Plaintiff's testimony was consistent with Dr. Kodela's findings. When the ALJ asked why he could not work full time, Plaintiff stated he often becomes paranoid, sees and hears things, becomes very anxious, and often will not leave his home. R. at 82. There are days when he cannot go to work due to symptoms, and there are times when he goes to work but must leave early due to symptoms. R. at 95. When asked by the ALJ how schizophrenia affects him, Plaintiff indicated it often made him paranoid, was a "big cause" of anxiety, caused hallucinations, caused his thoughts to be cloudy, and caused delusions. R. at 92. The hallucinations occur almost daily, hearing voices is "pretty regular," and delusions occur "maybe once a month." R. at 92-93. When he hears voices, experiences hallucinations, or becomes paranoid, Plaintiff said it is quite difficult to concentrate on any given task. R. at 93. Even with prescribed medications, Plaintiff suffers from auditory and visual hallucinations almost daily. R. at 96. When he hallucinates, he tries to "tune them out" by going to his room by himself. *Id.*

diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the ALJ must give "controlling weight" to the treating source's medical opinion. *Id.*; *see also Papesh v. Colvin,* 786 F.3d 1126, 1132 (8th Cir. 2015). Further, the longer a treating source has treated a claimant, and the more times a claimant has been seen by the treating source, the more weight should be given to the treating source's medical opinion. 20 C.F.R. § 416.927(c)(2)(i).

If controlling weight is not given to a treating source's medical opinion, the ALJ must consider certain factors when deciding what weight to give the medical opinion. *Id.* § 416.927(c). These factors include the length, nature, and extent of treatment relationship; frequency of examination; whether the medical opinion is supported by evidence and explanation; whether the medical opinion is consistent with the record as a whole; whether the medical opinion is given by "a specialist about medical issues related to his or her area of specialty"; and any other factors that "tend to support or contradict the medical opinion." *Id.* § 416.927(c)(2)-(6). Regardless of the weight afforded a treating source's opinion, the ALJ must "give good reasons" explaining why the ALJ gave said weight to a treating source's medical opinion. *Id.* § 416.927(c)(2). Even if the treating physician's opinion is not entitled to controlling weight, it should ordinarily be entitled to "substantial weight." *Papesh,* 786 F.3d at 1132 (citation omitted).

Although required to consider the foregoing factors and provide "good reasons" for the less than controlling weight given to Dr. Kodela's opinions, the ALJ did not discuss most of the required factors. First, the ALJ did not address the length, nature, and extent of the treatment relationship between Plaintiff and Dr. Kodela. Second, the ALJ failed to discuss the frequency with which Plaintiff was examined by Dr. Kodela – to wit, nearly every month for roughly two and one-half years. R. at 345-77, 403-27, 435-38, 441-44, 451-54, 463-66, 474-77, 482-85, 807-

13. Third, although the ALJ claimed Dr. Kodela's opinions were "somewhat inconsistent" with his treatment notes, the record establishes Dr. Kodela's opinions are consistent with his treatment notes, other medical providers' treatment notes, and medical records. *See*, *e.g.*, R. at 324-27, 345-47, 354-55, 361-62, 365-66, 381-87, 413-15, 421-23, 425-28, 432, 459, 461, 463, 467, 473-83, 584-85, 606, 809-11. Fourth, it is unclear if the ALJ considered Dr. Kodela's specialty--psychiatry.

In addition to failing to consider the required factors, the ALJ erred by concentrating on six appointments over the course of a year to discount Dr. Kodela's opinions. R. at 28. By relying on a few medical records, the ALJ ignored the longitudinal evidence contained in Dr. Kodela's treatment notes, which span roughly two and one-half years, and disregarded the waxing and waning of Plaintiff's symptoms. By way of example, on March 16, 2017, Plaintiff's symptoms showed some improvement, and Dr. Kodela noted Plaintiff was "not considered to be in need of admission." R. at 416-19. Less than one month later, on April 12, 2017, Plaintiff was admitted to the hospital for paranoia and schizophrenic episodes. R. at 381-97. Plaintiff reported it felt "like spiders [were] crawling in his skin," and he tried "cutting the spiders out." R. at 385, 421. He also reported hearing voices telling him to kill himself. R. at 385, 387. Similarly, in November 2017, Plaintiff described improvement with his symptoms, but two weeks later, he reported a panic attack with loud hallucinations. R. at 471-77.

As noted by the Eighth Circuit, "individuals with a mental illness may experience periods during which they are relatively symptom-free," but their "level of functioning can vary significantly over time." *Mabry v. Colvin*, 815 F.3d 386, 392 (8th Cir. 2016) (citing 20 C.F.R. Pt. 202, Subpt. P., App. 1, § 12.00(D)). While it is "inherent in psychotic illnesses that periods of remission will occur," a period of remission does "not mean that the disability has ceased." *Id*.

(citation omitted); *see also Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citation omitted) (observing mental illness is unpredictable, and thus, "[s]ymptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse."). Because of the nature of mental illness, the ALJ erred by failing to consider the longitudinal evidence and erred by focusing on select records showing occasional normal examination findings. *See also Wenell v. Berryhill,* No. 4:18-CV-00098-NKL, 2018 WL 4219427 at *3 (W.D. Mo. Sept. 5, 2018) (observing an ALJ may not "pick and choose" only evidence in the record buttressing her conclusion) (citation omitted).

Finally, the ALJ's characterization of Dr. Kodela's MSSs as "check box" forms is misplaced. *See Reed v. Barnhart,* 399 F.3d 917, 921 (8th Cir. 2005) ("An MSS is a checklist evaluation in which the responding physician ranks the patient's abilities and is considered a source of 'objective medical evidence.'"). The Eighth Circuit has never upheld a decision to discount an MSS solely on the basis that the "'evaluation by box category' is deficient *ispo facto*." *Id.* Here, the limitations listed in both MSSs prepared by Dr. Kodela are fully consistent with the treatment history, medical records, and Dr. Kodela's clinical findings and diagnoses.

Upon remand, the ALJ must (1) give controlling weight to Dr. Kodela's opinions, or (2) consider and apply the factors in 20 C.F.R. § 416.927(c)(2)-(6) and provide specific and sound reasons if less than controlling weight is afforded Dr. Kodela's opinions.

### B. The ALJ's RFC

Plaintiff also argues this matter must be remanded because the ALJ's RFC is not supported by substantial evidence. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own

description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Because Plaintiff's RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.*

Plaintiff contends the mental limitations in the ALJ's RFC are not supported by substantial evidence, and the ALJ failed to include several mental limitations set forth in Dr. Kodela's opinions. Because this matter is being remanded for reconsideration and reweighing of Dr. Kodela's opinions, the ALJ shall reassess Plaintiff's mental RFC after reconsidering and reweighing Dr. Kodela's opinions. In addition, the ALJ must set forth mental limitations in the RFC that are supported by some medical evidence and identify the medical evidence supporting those limitations.

### C. **Plaintiff's Daily Activities**

Finally, the Court notes the ALJ relied in part on Plaintiff's daily activities when reaching her decision. Specifically, the ALJ found Plaintiff's "self-reported daily activities do not support disabling symptoms." R. at 27. The ALJ noted Plaintiff went to the gym, walked, managed finances, drove, shopped at Walmart for up to an hour, played videogames, watched television, built computers, worked part-time, swam in a lake, spent time with friends, prepared some meals, and managed personal care. *Id.* Contrary to the Social Security regulations, the ALJ failed to consider or address how Plaintiff's mental health symptoms affected his daily living activities and his ability to work. 20 C.F.R. § 404.1529(a). Here, significant evidence in the record demonstrated the daily activities identified by the ALJ in her decision did not occur or were substantially limited and Plaintiff was unable to work when he suffered from mental health symptoms.

For instance, Plaintiff testified he worked on average one day a week for one hour moving furniture for his family's business. R. at 81-82, 94. When asked by the ALJ why he could not work more, Plaintiff stated his mental illness prevented him from working more because he often became paranoid, saw and heard things, became very anxious, and did not leave his house. R. at 82. He testified there were times he was unable to go to work or had to leave work due to his symptoms. R. at 95.

Although Plaintiff can drive, he testified he was unable to drive when he suffered from hallucinations. R. at 96. Plaintiff indicated when he suffered from heightened anxiety, he was unable to go about his daily activities and preferred to stay home, away from other people. R. at 96-97. Because of his symptoms, there were times when he could not perform any of his daily activities, causing him to stay in bed. R. at 98. Plaintiff testified he was unable to engage in daily activities two times per week. *Id.*

In his function report, Plaintiff wrote: "*On days I feel good* I shower, dress, prepare breakfast then clean things in my apartment, do laundry, watch TV or play a game on computer." R. at 241 (emphasis added). With respect to cooking, Plaintiff indicated he did not prepare food when he suffered from hallucinations. R. at 242. Regarding cleaning and laundry, Plaintiff stated he required encouragement on days when he did not feel well. *Id.* With respect to managing his finances and money, Plaintiff reported he could not count money when he was "feeling bad" and was "distracted by vision and audible hallucinations." R. at 243.

The Eighth Circuit has often expressed skepticism about the probative value of evidence of daily activities. *See, e.g., Reed,* 399 F.3d at 923 (observing it is well-settled law that "a claimant need not prove she is bedridden or completely helpless to be found disabled.") (citation omitted); *Burress v. Apfel,* 141 F.3d 875, 881 (8th Cir. 1998) (noting the ability to do light housework and

12
Case 6:19-cv-03433-WBG   Document 17   Filed 02/22/21   Page 12 of 13

visit friends provides little or no support for finding a claimant can perform full-time competitive work) (citations omitted). Here, the ALJ erred in simply listing Plaintiff's daily activities that occurred when he felt well. The ALJ did not address or consider how often the daily activities were substantially limited, or did not occur, when Plaintiff suffered from symptoms caused by his serious mental impairments. 20 C.F.R. § 404.1529(a). On remand, if the ALJ chooses to rely on Plaintiff's daily activities, the ALJ must consider the frequency and degree to which those activities either do not occur, or are substantially limited, by Plaintiff's significant mental impairments. Additionally, the ALJ shall consider Plaintiff's statements about his inability to work due to his mental health symptoms.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the substantial evidence in the record as a whole does not support the ALJ's decision. Accordingly, the Commissioner's decision is reversed, and the matter is remanded for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATE: February 22, 2021         */s/ W. Brian Gaddy*
　　　　　　　　　　　　　　　　　　W. BRIAN GADDY
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE